883 P.2d 65

**HAWAI'I HOUSING AUTHORITY, a public body and a body corporate and politic, Plaintiff–Appellee,**

v.

**Lawrence E. UYEHARA, Defendant–Appellant, and Richard Lyman, Jr., Matsuo Takabuki, Myron B. Thompson, William Shaw Richardson, and Henry Haalilio Peters, Trustees under the will and of the Estate of Bernice Pauahi Bishop, Deceased, WYCO, a California corporation qualified to do business in the State of Hawai'i, Kaiser Hawai'i–Kai Development Co., a Nevada corporation, Kaiser Aetna, a California corporation, Kacor Realty, Inc., a California corporation, Wynona H. Akana, George E.T. Aoki, Carolee M. Aoki, Melvin P. Barros, Leatrice S.Q. Barros, Robert T. Chee, Faye E. Chee, John Yen Sung Ching, Annabelle Kaomealani Ching, Stephen T.C. Ching, Carol J. Ching, James C.H. Chun, Ruth L. Chun, Richard M. Chun, Genevieve Y. Chun, Deal Crooker, Elizabeth P. Crooker, David Allen Dieter, Rosalie Ann Dieter, Ralph R. Germann, Evelyn A. Germann, George W. Harvey, Joyce J.**

---

Harvey, Walter Y. Hosokawa, Doris S. Hosokawa, Harry H. Isobe, Shizue E. Isobe, Carol Reiko Kinoshita, Hiroshi Kondo, Herbert T. Kumabe, Janet K. Kumabe, Allan Ryo Kunimoto, Jean Mieko Kunimoto, Frederick K.H. Kwock, Audrey L. Kwock, Darrell R. Large, Rheta C. Large, Tore Liahjell, Gerda Liahjell, Warren M. LaFrance, Alta M. LaFrance, Chiyoko Maeda, Victor Maldonaldo, Emily G.L. Maldonaldo, John Michel, Christopher Philip McKenzie, Lyda Mae McKenzie, Julian Nelson, Evelyn Y. Nelson, Alexander Oka, Jean A. Oka, Gordon C. Ontai, Betty L. Ontai, Lloyd E. Printup, Gretchen W. Printup, Edward G. Rodrigues, Muriel H. Rodrigues, Gary M. Sanada, Amy S. Sanada, Robert J. Speck, Setsuko Speck, Lester Q. Spielvogel, Ellen Ruth Spielvogel, Richard Hill Sylva, Lona Margaret Sylva, Ernest T. Tsugawa, Ethel T. Tsugawa, Hatsue I. Uyehara, Seikichi Uyehara, Jesse E. Spencer, Joyce R. Spencer, (Russell E. Laubaugh, Evelyn E. Laubaugh, Sellers Under agreement of sale), Gerald W. Warwick, Grace W. Warwick, (Robert Sydney Johnson, Sharon Lee Johnson, Sellers under agreement of sale), Charles W. Weaver, Jr., Jean T. Weaver, Dexter T. Woodall, Minoru Yamamoto, Edith H. Yamamoto, Reynold Y.H. Zane, and Beatrice L. Zane, Defendants.

No. 16570.

Supreme Court of Hawai'i.

Oct. 21, 1994.

Thomas T. Watts of Kemper & Watts, on the briefs, Honolulu, for defendant-appellant.

Charles A. Price (Paul S. Aoki with him on the brief of Ashford & Wriston), Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Defendant-appellant Lawrence E. Uyehara (Uyehara) appeals from the circuit court's order denying his motion to set aside the stipulation and order of dismissal with prejudice of the Hawai'i housing authority's (HHA)[1] first amended complaint in eminent domain against the Kamehameha Schools/Bishop Estate (Trustees). The lessees, including Uyehara, of the affected property, known as the Spinnaker Isle development tract (Spinnaker Isle), were joined as co-defendants.

Uyehara contends that the circuit court erred in denying his motion to set aside stipulation and order of dismissal with prejudice, which was based on an allegation that his attorney agreed to the settlement without his consent and that the resulting stipulation and order of dismissal was therefore entered erroneously. We hold that the motion was untimely and therefore properly denied by the circuit court.

## I. FACTS

On April 5, 1982, HHA filed its complaint in eminent domain, seeking to condemn the Trustees' leased fee interests in Spinnaker Isle located in Hawai'i Kai, O'ahu. HHA filed this action pursuant to the Land Reform Act, Hawai'i Revised Statutes (HRS) Chapter 516, which allows condemnation of private property as a matter of public policy if over fifty percent of the lessees in a development or twenty-five individual lessees, whichever number is less, petition to convert the particular property from leasehold to fee simple.[2] In accordance with the above provision, the lessees of Spinnaker Isle, including Uyehara, petitioned the HHA to condemn the Trustees' leased fee interests. The lessees were subsequently named as co-defendants in the ensuing HHA condemnation action.

The trial was set for July 28, 1986, but prior to this date, the case settled. During a meeting on July 10, 1986, all of the thirty-two lessees present ratified the settlement proposed by the Trustees. Ten lessees involved in the condemnation action, one of whom was Uyehara, did not attend the ratification meeting. The attorney for the lessees, Dennis O'Connor, claims, contrary to Uyehara's contention, that the absent lessees were thereafter contacted and later ratified the proposed settlement.

The conditions of the settlement provided in pertinent part: (1) the Trustees would sell the leaseholds to willing lessees of the Spinnaker Isle development, whether or not they were involved in the condemnation action; (2) all lessee litigants would withdraw from the condemnation action and cause the litiga-

---

1. The Hawai'i housing authority was renamed the "housing finance and development corporation" pursuant to HRS § 201E-3 (Supp.1992). All references in HRS chapter 516 to the Hawai'i housing authority were amended in 1992 to read "housing finance and development corporation" or "corporation."

2. HRS § 516-22 (1985) provides in relevant part:

   The authority [HHA] may designate all or a portion of a development tract for acquisition and acquire leased fee interests in residential houselots in such development tract, through the exercise of the power of eminent domain or by purchase under the threat of eminent domain after twenty-five or more lessees or the lessees of more than fifty per cent of the residential lease lots within the development tract, whichever number is the lesser, have applied to the corporation to purchase the leased fee interest in their residential leasehold lots pursuant to section 516-33[.]

   HRS § 516-22 was amended in 1988 without any substantive changes.

tion to be dismissed; and (3) lessees purchasing their leaseholds would pay their pro rata share of the Trustees' legal costs and fees.

In a letter dated July 30, 1986, O'Connor notified Uyehara that the condemnation action had been settled as approved by all of the lessees and that "the lawsuit [would] be dismissed shortly." Attached to this letter was correspondence from Paul J. Cathcart of the Bishop Estate that outlined the terms of the settlement as stated above. In another letter dated June 26, 1987, O'Connor discussed the status of the settlement proceedings and informed the lessees of what to expect from the Trustees. Uyehara received both the July 30, 1986 and June 26, 1987 letters but did not respond to either correspondence to indicate any dissatisfaction with the settlement.

On or about July 31, 1987, the Trustees contacted the lessees by letter pursuant to the terms of the settlement and offered to sell the leased fee interests in the individual Spinnaker Isle lots for specific prices based on calculations provided in the letter. The prices, however, were contingent upon the lessees' acceptance of the offer within thirty days. The offer also included conditions for late acceptance:

> If your Reply to Proposal is returned to and postmarked after the Reply Date, you will not be allowed to buy unless you agree to an increase in the Sales Price of 1 1/2% per month or any fraction thereof. Late acceptance may be up to 3 months from the Reply date.

The Trustees initially offered to sell Uyehara his leased fee interest for $51,037.00. Uyehara, however, felt he could not afford this purchase price and did not respond before August 30, 1987, the required reply date. He later changed his mind, and in December 1987, over three months after the initial reply date, Uyehara contacted the staff of the Trustees to inquire about late acceptance of the original sales offer. He was told that the acceptance deadline had passed and the original offer had therefore lapsed. The Trustees' staff then informed Uyehara that he could expect to receive a new offer in early 1988.

On August 29, 1988, the stipulation and order of dismissal with prejudice of the HHA condemnation action was entered in this case.

The Trustees' second offer to sell Uyehara his leasehold was not made until September 13, 1988, and the buy-out price was now $93,371.00. Uyehara again did not accept the offer within the requisite time period and the offer lapsed.

Dissatisfied with the second, considerably higher purchase price, Uyehara consulted with O'Connor and two other attorneys as to the possibility of reinstating the first offer. All three attorneys informed Uyehara that he had acted too late and nothing could be done. Nonetheless, Uyehara contacted another attorney and on December 5, 1990, Uyehara filed a complaint for declaratory relief, specific performance and/or breach of settlement agreement against the Trustees in the First Circuit Court, seeking to reinstate the terms of the first offer to sell.

In September 1991, Uyehara received a third offer from the Trustees in the amount of $220,000.00. Again, this purchase price was unacceptable to Uyehara. After consulting with a fifth attorney, Uyehara filed a motion to set aside the stipulation and order of dismissal with prejudice filed August 29, 1988. Uyehara alleged that, unbeknownst to him, O'Connor had acted unlawfully by failing to obtain Uyehara's consent to the stipulation and order to dismiss. On October 16, 1992, the circuit court denied Uyehara's motion. This timely appeal followed.

## II. *STANDARD OF REVIEW*

It is well settled that the trial court has a very large measure of discretion in passing upon motions under [Hawai'i Rules of Civil Procedure (HRCP)] Rule 60(b) and its order will not be set aside unless we are persuaded that under the circumstances of the particular case, the court's refusal to set aside its order was an abuse of discretion.

*Paxton v. State,* 2 Haw.App. 46, 48, 625 P.2d 1052, 1054 (1981) (citing Wright & Miller, *Federal Practice and Procedure* § 2872 (1973)); *see also Matsushita v. Container Home Supply, Inc.,* 6 Haw.App. 439, 445 n.

11, 726 P.2d 273, 277 n. 11 (1986) (citing *First Trust Co. of Hilo v. Reinhardt,* 3 Haw.App. 589, 655 P.2d 891 (1982)).

## III. *DISCUSSION*

### A. *Standing*

The Trustees contend that Uyehara lacks standing to set aside the stipulation and dismissal order because: (1) the Land Reform Act under HRS Chapter 516 empowers only the HHA to condemn the Trustees' leased fee interests; (2) the HHA did not seek any relief against Uyehara, and Uyehara failed to file a cross-complaint; and (3) nothing in Chapter 516 requires the HHA to get Uyehara's consent to dismiss its claims, and no individual lessee has the power to continue the proceedings.

Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated. And the crucial inquiry in its determination is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of ... [the court's] jurisdiction and to justify exercise of the court's remedial powers on his behalf."

*Life of the Land v. Land Use Comm'n,* 63 Haw. 166, 172, 623 P.2d 431, 438 (1981) (citation omitted) (emphasis in original).

■ Uyehara has a personal stake in the outcome of the controversy because he seeks to convert his leased fee property to fee simple property, the subject matter of the contested order. Moreover, pursuant to HRS § 516–56,[3] Uyehara, because he is a lessee of the disputed property, was named as a co-defendant along with the Trustees in the condemnation action. Therefore, Uyehara has standing to move to set aside the action in which he was named a party.

### B. *HRCP Rule 60(b)*

Uyehara contends that the circuit court erroneously denied his HRCP Rule 60(b) mo-

tion to set aside the stipulation and order to dismiss.

HRCP Rule 60(b) (1990) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; ... (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Appellant claims relief from the circuit court's stipulation and order of dismissal is available to him under subsection (6) of HRCP Rule 60(b).

"To qualify for relief under HRCP 60(b)(6), 'the motion must be based upon some reason other than those stated in clauses (1)-(5)[.]' ... In other words, 'Rule 60(b)(6) is unavailable when the relief sought is within the coverage of some other provision of Rule 60(b)[.]' " *Dillingham Inv. Corp. v. Kunio Yokoyama Trust,* 8 Haw.App. 226, 235, 797 P.2d 1316, 1320 (1990) (citations omitted). Thus, " 'a case cannot fall within *both* Rule 60(b)(1) and Rule 60(b)(6).' " *Id.* (quoting *Brown v. Burnside,* 109 F.R.D. 412, 413 (E.D.N.Y.1986) (emphasis added)).

■ If the moving party's alleged reason for relief was either "mistake, inadvertence, surprise, or excusable neglect," then that party, pursuant to HRCP Rule 60(b)(1), is required to file for relief within a year of the entry of the subject judgment, order or proceeding. *Id.* (citing *Waggoner v. R. McGray, Inc.,* 743 F.2d 643, 645 (9th Cir.1984)). Alternatively, "[HRCP Rule 60(b)(6) ] provides for extraordinary relief and is only invoked upon a showing of exceptional circumstances." *Isemoto Contracting Co. v. Andrade,* 1 Haw.App. 202, 205, 616 P.2d 1022, 1025 (1980). "A party seeking relief under

---

**3.** HRS § 516–56 (1985) provides in relevant part that "[t]he parties to the eminent domain action brought under this chapter shall be the authority as plaintiff and the lessees and all other neces-

sary parties as defendants." HRS § 516–56 was subsequently amended without substantive changes in 1991.

HRCP Rule 60(b)(6) after the time of appeal has run must establish the existence of 'extraordinary circumstances' that prevented or rendered him unable to prosecute an appeal." *In re Hana Ranch Co.*, 3 Haw.App. 141, 147, 642 P.2d 938, 942 (1982) (citations omitted).

### 1. Untimely filing

▮▮▮ Uyehara filed his HRCP Rule 60 motion over three and one-half years after the entry of the order. Because an HRCP Rule 60(b)(6) motion has no statute of limitations, *id.*, but need only be filed within the more expansive "reasonable" time period, *Aiona v. Wing Sing Wo Co.*, 45 Haw. 427, 431, 368 P.2d 879, 881 (1962), Uyehara could conceivably obtain relief pursuant to an HRCP Rule 60(b)(6) motion despite the three year delay.

> Every motion under Rule 60(b) must be made within a reasonable time, and if made for certain reasons enumerated in the rule must be made not more than one year after the judgment. It is not necessary to consider the applicability of the one year limit. Considering the over-all limit of 'a reasonable time' we have inquired into the explanation for the delay in applying for reinstatement of the action.

*Aiona*, 45 Haw. at 431, 368 P.2d at 881.

Uyehara contends that the three and one-half year delay in filing his HRCP Rule 60(b) motion is not unreasonable because, throughout this period, he was attempting to obtain counsel. Uyehara contacted five attorneys during this period. However, even under the more relaxed time limitations of HRCP Rule 60(b)(6), it is unreasonable for Uyehara to claim that three and one-half years is a reasonable time expenditure for obtaining an attorney.

Accordingly, assuming Uyehara's HRCP Rule 60(b) motion is a Rule 60(b)(6) motion, the three and one-half year delay amounts to an unreasonable delay in filing.

### 2. Mistake v. Extraordinary Circumstances

Even if Uyehara's 60(b)(6) motion was not untimely, this motion would still be inadequate because Uyehara failed to establish the substantive basis for HRCP Rule 60(b)(6) relief.

Uyehara contends that O'Connor acted unlawfully when he agreed to the dismissal of the HHA condemnation action without Uyehara's consent. This reason for relief, Uyehara argues, falls under HRCP Rule 60(b)(6) because the failure of an attorney to obtain a client's express consent in settlement proceedings constitutes "extraordinary circumstances" that justify relief pursuant to HRCP Rule 60(b)(6).

However, as discussed by the Intermediate Court of Appeals in *City & County of Honolulu v. Bennett*, 2 Haw.App. 180, 627 P.2d 1136 (1981):

> "[a] quite typical kind of case is that in which a party comes in more than a year after judgment to assert that he is the victim of some blunder by his counsel. Claims of this kind seem to fit readily enough within such grounds as mistake, inadvertence, and excusable neglect, all stated in clause (1), and the courts frequently have so reasoned and held that clause (6) was inapplicable. But if the court is persuaded that the interests of justice so require, it is likely to find aggravating circumstances sufficient to permit it to say that the case is properly within clause (6)."

*Id.* at 182, 627 P.2d at 1138 (quoting Wright & Miller, *Federal Practice and Procedure: Civil* § 2864, at 221–3 (1973)).

"Although clause (1) of Rule 60(b) mentions neglect, when an attorney's neglect is gross and inexcusable courts have held that relief may be justified under Rule 60(b)(6)." *Chang v. Smith*, 778 F.2d 83, 85 (1st Cir. 1985). Thus, though " '[t]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated and deliberate choices he has made[,]' " *Hana Ranch*, 3 Haw.App. at 147, 642 P.2d at 942 (quoting Wright & Miller, *Federal Practice and Procedure: Civil* § 2864 (1973)), "a case could arise of such extreme aggravation with respect to the conduct of counsel that a trial court, in its discretion, would set aside a judgment in a civil case under Rule 60(b)(6)." *Bennett*, 2 Haw.App. at 184, 627 P.2d at 1139.

In the instant case, the critical inquiry, therefore, is whether O'Connor's alleged failure to obtain Uyehara's express consent constituted gross and inexcusable neglect such that it amounted to an "extraordinary circumstance" warranting relief under HRCP Rule 60(b)(6).

### a. Authority to Consent

■ HRS § 605–7 clearly sets restrictions on an attorney's power to act as an agent in settlement proceedings:

> The practitioners licensed by the supreme court shall have control to judgment and execution, of all suits and defenses confided to them; provided that *no practitioner shall have power to compromise, arbitrate, or settle such matters confided to the practitioner, unless upon special authority in writing from the practitioner's client.*

HRS § 605–7 (1985) (emphasis added).

This court recognized the above restriction on an attorney's authority to settle on behalf of his or her client in *McKeague & Davis, Adm'x v. Freitas,* 40 Haw. 108 (1953). "[T]he authority of an attorney need not be given in any particular form or conferred in any particular manner (*except when compromising pending litigation*) and, like any other fact, the fact of agency or the extent of an agent's authority may be created by implication[.]" *Id.* at 113 (emphasis added). Inasmuch as settling a filed lawsuit constitutes "compromising pending litigation," this court in *McKeague* clearly held that an attorney does not have implied authority to consent to settle a matter on behalf of his or her client.

O'Connor, who acted as Uyehara's agent in all aspects of the condemnation action—attending all meetings and carrying on all correspondence with the HHA and the Trustees—reasonably assumed that Uyehara's lack of participation and apparent acquiescence to all decisions indicated Uyehara's intent to have O'Connor act as his representative and agent. Nonetheless, pursuant to HRS § 605–7, the express written consent of the client is required in settlement proceedings. The record does not reflect that O'Connor obtained Uyehara's written consent to stipulate to a dismissal of the condemnation action. Therefore, it appears that O'Connor's act of consenting on behalf of Uyehara was unauthorized.

### b. Subsequent Ratification

■ Even if O'Connor did not have either express or implied authority to agree to the stipulation on Uyehara's behalf, the circuit court's denial of Uyehara's motion to set aside would not amount to an abuse of discretion if Uyehara subsequently ratified the stipulation. "[T]he unauthorized act of an agent, if ratified, is as binding upon the principal as an original express grant of authority." *McKeague,* 40 Haw. at 113.

Uyehara claims that he did not ratify the dismissal of the condemnation action because he "was not even aware that his attorney was going to stipulate to dismiss the case with prejudice." The record does not support this contention.

Uyehara was aware of the settlement as demonstrated by his attempts to purchase his leasehold from the Trustees even after the specified reply date. Without the settlement that provided for the sale of the leased fee interests, Uyehara would have no reason to believe that the Trustees would even acknowledge an offer to purchase the leaseholds. Moreover, Uyehara was also aware that the settlement provided for the purchase of the lessees' leasehold properties on the condition that the lessees dismiss the condemnation action:

> *Dismissal of Lawsuit*—All lessee litigants will withdraw from Civil No. 70474 and cause the litigation to be dismissed. Nonpurchasing litigants will *not* have to pay their prorata share of Kamehameha Schools/Bishop Estate's legal costs and fees.

July 10, 1986 letter from Paul J. Cathcart of the Bishop Estate (emphasis in original).[4] Uyehara admitted that he received a letter dated July 30, 1986 from O'Connor that clearly articulated that the case had settled

---

4. This letter outlined the terms of the settlement and was attached to the July 30, 1986 letter from O'Connor that Uyehara admitted he received.

and that the dismissal of the lawsuit would therefore follow.[5]

Even if Uyehara did not understand the implications of the July 30, 1986 correspondence from O'Connor, Uyehara could not reasonably believe that the settlement that afforded the lessees the opportunity to purchase their leaseholds could coexist with the continuation of the condemnation action that was initiated in order to accomplish the same objective. The settlement and the dismissal of the condemnation action go hand in hand. Therefore, if Uyehara subsequently ratified the settlement agreement by attempting to abide by its terms in offering to purchase his leasehold, he also ratified and thereby consented to the dismissal of the condemnation action.

Uyehara's failure to object to the terms of the settlement agreement for three years indicated his acquiescence to O'Connor's unauthorized act of consenting to the settlement agreement on his behalf. In *Scott v. Pilipo*, 25 Haw. 386, 390 (1920), we stated: " '[a]ny failure on the part of the client to object to an unauthorized act within a reasonable time after becoming aware of it will be construed as a ratification of it[.]' " *See* Restatement (Second) of Agency § 94 (1958) ("An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it."). Therefore, Uyehara's failure to contest the settlement constituted a ratification of the settlement and consequently a ratification of the stipulation and order to dismiss the condemnation action.

This is most clearly stated by Uyehara himself in his complaint for declaratory relief, specific performance and/or breach of settlement agreement filed on December 5, 1990. In *Uyehara v. Trustees Under the Will and of the Estate of Bernice Pauahi Bishop, et al.*, Civ. No. 90–3838–12, Uyehara straightforwardly asserts:

The Settlement Agreement entered into in settlement of the condemnation proceeding is in the nature of a contract between the parties, namely; the Defendant Bishop Estate and the petitioning leaseholders and buyers, among which are the Plaintiffs [including Uyehara] and any breach thereof is actionable.

Uyehara cannot seek to set aside the stipulation and order dismissing the condemnation action and, at the same time, argue for the specific enforcement of the settlement agreement. "One who seeks to repudiate a settlement and throw the subject matter into the arena of litigation cannot at the same time claim the benefit of the agreement he is repudiating." *Chun Ming v. Ho*, 45 Haw. 521, 524, 371 P.2d 379, 404, *reh'g denied*, 46 Haw. 13, 373 P.2d 141 (1962).

Thus, O'Connor's unauthorized act of consenting to the order to dismiss, upon Uyehara's ratification, "is as binding upon ... [Uyehara] as an original express grant of authority." *McKeague*, 40 Haw. at 113. We need not, therefore, decide whether O'Connor's failure to obtain Uyehara's express consent constituted gross and inexcusable neglect inasmuch as Uyehara subsequently ratified the settlement. Accordingly, the circuit court's denial of Uyehara's motion to set aside the stipulation and order to dismiss was not an abuse of discretion.

## IV.  *CONCLUSION*

Based on the foregoing, we affirm the circuit court's denial of Uyehara's motion to set aside the stipulation and order to dismiss.

---

5. The July 30, 1986 letter from O'Connor stated in relevant part:

As expected, your case has been settled. All of you have approved the settlement as reflected in the attached letter from Paul Cathcart of the Bishop Estate, and the lawsuit will be dismissed shortly.