159 P.3d 814

Esther J. BUSCHER, Plaintiff–Appellee,

v.

Duane S. BONING; Commerce Insurance Co.; Avis Rent–A–Car System, Inc., Defendants–Appellants,

and

State of Hawai'i, Defendant–Appellee,

and

Crawford & Co.; John Does 1–5; Jane Does 1–5; Doe Corporations 1–5; Roe Non–Profit Corporations 1–5 and Roe Governmental Entities 1–5, Defendants

and

Duane S. Boning; Commerce Insurance Co. and Avis Rent–A–Car System, Inc., Third–Party Plaintiffs–Appellants,

v.

Stanford H. Masui, Third–Party Defendant–Appellee.

No. 27232.

Supreme Court of Hawai'i.

June 7, 2007.

204

John H. Price, Honolulu, and Amanda J. Weston, on the briefs, for defendants-appellants and third-party plaintiffs-appellants Duane S. Boning, Commerce Insurance Co., and Avis Rent–A–Car System, Inc.

Herbert R. Takahashi, Danny J. Vasconellos, and Rebecca L. Covert (of Takahashi, Masui, Vasconcellos & Covert), Honolulu; Stanford H. Masui in substitution after 5/1/06, on the briefs, for plaintiff-appellee Esther J. Buscher and third-party defendant-appellee Stanford H. Masui.

Dorothy Sellers and Kimberly Tsumoto, Deputy Attorneys General, on the briefs, for defendant-appellee State of Hawaiʻi.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

This workers' compensation case arose from a 1996 motor vehicle collision between vehicles operated by Plaintiff–Appellee Esther J. Buscher and Defendant–Appellant and Third–Party Plaintiff–Appellant Duane S. Boning. At the time of the collision, Buscher was driving within the course and scope of her employment with Defendant–Appellee State of Hawai'i. Buscher made a claim for workers' compensation benefits to the State and sued Boning in Civil No. 97–237K. Buscher and Boning agreed to settle the case for Boning's policy limits of $125,000.00, and the case was dismissed with prejudice by stipulation of the parties. Soon thereafter, however, an issue arose with respect to whether the Employer State consented to the alleged settlement between Buscher and Boning as required by Hawai'i Revised Statutes (HRS) § 386–8 (1993), and Buscher filed the instant lawsuit, Civil No. 99–0220K.

Boning and Defendants–Appellants and Third–Party Plaintiffs–Appellants Commerce Insurance Co. [hereinafter, Commerce] and Avis Rent–A–Car System, Inc. [hereinafter, Avis, and collectively with Boning and Commerce, Defendants] appeal from the Circuit Court of the Third Circuit's March 15, 2005 final judgment,[1] raising the following points of error on appeal: (1) the circuit court abused its discretion in granting Buscher's September 24, 2001 motion to set aside the stipulation for dismissal with prejudice of Civil No. 97–237K as to all claims and parties [hereinafter, motion to set aside the stipulation]; (2) the circuit court erred in ruling in its February 11, 2002 findings of facts, conclusions of law, and order that the State owed no duty to Boning to reasonably consent to the settlement agreement after the court previously found that the State had acted unreasonably and outrageously in withholding its consent; (3) the circuit court erred by denying Defendants' August 5, 2002 motion to enforce the settlement agreement; (4) the circuit court erred in dismissing Defendants' third-party claim against Third–Party Defendant Stanford H. Masui, Buscher's attorney; (5) the circuit court erred in dismissing Defendants' counterclaim against Buscher; (6) the circuit court erred in denying Defendants' October 12, 2000 motion for interpleader and dismissal; and (7) the circuit court abused its discretion in granting Buscher's motion for taxation of costs.

In reply, Buscher contends: (1) the circuit court did not abuse its discretion in vacating the stipulated dismissal between the parties because the settlement failed; (2) the settlement between Buscher and Boning was either void or voidable; (3) the circuit court did not err in refusing to enforce the agreement; (4) the State's refusal to consent to a third-party settlement agreement was obstructive and unreasonable; (5) adverse counsel owes no duty to defendants or their attorneys in the course of representation of a party; (6) the court's award of expenses to Buscher as the prevailing party, and based on an offer of judgment, was reasonable; and (7) Defendants' fifth and sixth points of error should be deemed waived pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7). Additionally, the State, in response to Boning's second point of error, replies that the circuit court correctly rejected Boning's cross-claim against the State for unreasonable failure to consent. Based on the following, the circuit court's March 15, 2005 final judgment is affirmed. In addition, we vacate the circuit court's June 1, 2005 order awarding costs and remand this case to the circuit court with instructions that an amended order be entered, awarding costs in the amount of $20,002.82 in favor of Buscher.

## I. BACKGROUND

### A. The Motor Vehicle Collision and the First Lawsuit, Civil No. 97–237K

On June 13, 1996, Buscher, while driving within the course and scope of her employment with the State, was injured in a motor vehicle collision with a vehicle driven by Boning. Buscher made a claim for workers' compensation benefits to the State and also sued Boning in 1997 in Civil No. 97–237K. The State did not intervene in that case, nor did it initiate its own suit against Boning in connection with the motor vehicle collision.

---

1. The Honorable Ronald Ibarra presided over this matter.

On July 9, 1999, Buscher accepted Defendants' offer to settle Civil No. 97–237K for $125,000.00. The State was advised of the settlement by letter dated July 14, 1999. Boning's insurers, Commerce and Avis, issued settlement checks totaling $125,000.00, payable to Buscher and Masui, in July 1999. Such checks, however, apparently were never delivered to Buscher or Masui. Buscher and Boning, on numerous occasions, both requested written consent to the settlement from the State as required by HRS § 386–8.[2] Without receiving such consent, however, Buscher signed a release and settlement agreement, drafted by Boning, on August 2, 1999. The settlement agreement did not require the signature of a representative of the State, nor did it mention anything about the State's consent. Buscher's attorney, Masui, signed his approval of the form and content of the release and settlement agreement. Masui also signed a stipulation for dismissal with prejudice as to all claims and parties in Civil No. 97–237K. On August 9, 1999, Boning filed the signed stipulation for dismissal with prejudice in the circuit court, despite the fact that Buscher had not yet been paid the settlement consideration and the State had not yet consented to the settlement.

By letter dated October 15, 1999, the State informed Buscher that it consented to the settlement conditioned upon: (1) the deposit of $12,500.00 into an interest-bearing account until the amount of the workers' compensation lien and/or any amount of contribution for fees and costs was finally determined; and (2) the State's reservation of its "rights, remedies, claims or causes of action it may have against ... Boning with respect to any workers compensation benefits provided by the State to Mrs. Buscher...."

Perceiving the October 15, 1999 letter as the State's written consent, Masui requested that Defendants issue settlement checks by letters dated October 18 and 27 and November 5. Having not received the checks, Masui, by letter dated November 15, 1999, informed Defendants that he considered the settle-

---

2. HRS § 386–8, "Liability of third person," provides in relevant part:

When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the employer or another employee of the employer acting in the course of his employment a legal liability to pay damages on account thereof, the injured employee or his dependents (hereinafter referred to collectively as the employee) may claim compensation under this chapter and recover damages from such third person.

If the employee commences an action against such third person he shall without delay give the employer written notice of the action and the name and location of the court in which the action is brought by personal service or registered mail. The employer may, at any time before trial on the facts, join as party plaintiff.

. . . .

*No release or settlement of any claim or action under this section is valid without the written consent of both employer and employee.* The entire amount of the settlement after deductions for attorney's fees and costs as hereinafter provided, is subject to the employer's right of reimbursement for his compensation payments under this chapter and his expenses and costs of action.

. . . .

If the action is prosecuted by the employee alone, the employee shall be entitled to apply out of the amount of the judgment for damages, or settlement in case the action is compromised before judgment, the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. After the payment of such expenses and attorney's fee there shall be applied out of the amount of the judgment or settlement proceeds, the amount of the employer's expenditure for compensation, less his share of such expenses and attorney's fee. On application of the employer, the court shall allow as a first lien against the amount of the judgment for damages or settlement proceeds, the amount of the employer's expenditure for compensation, less his share of such expenses and attorney's fee.

. . . .

In the event that the parties are unable to agree upon the amount of reasonable litigation expenses and the amount of attorneys' fees under this section then the same shall be fixed by the court.

After reimbursement for his compensation payments the employer shall be relieved from the obligation to make further compensation payments to the employee under this chapter up to the entire amount of the balance of the settlement or the judgment, if satisfied, as the case may be, after deducting the cost and expenses, including attorneys' fees.

(Emphasis added.)

ment "void for failure of your clients to meet their obligations." In reply, by letter dated November 16, 1999, Defendants' counsel stated:

> Please be reminded that you personally assured me that you would "take care of" the lien with Employer, State of Hawai['[]i. [Deputy Attorney General] Ms. Schoen then personally called me on November 5, 1999 and told me that Employer would not consent to the settlement you and I reached on behalf of our respective clients.... Therefore, we have not received consent from the State as you insist.

### B. The Instant Lawsuit, Civil No. 99–0220K

On December 13, 1999, Buscher filed the instant lawsuit, Civil No. 99–0220K, which included the previously dismissed personal injury lawsuit as Count I as well as numerous other claims accusing Defendants of breaching the settlement agreement and the State of interfering with the agreement by wrongfully withholding consent. In response, Defendants: (1) cross-claimed against the State for, inter alia, unreasonable failure to consent to the settlement, interference with a contractual relationship, and negligent claims handling/negligent failure to consent; (2) counterclaimed against Buscher for, inter alia, abuse of process, breach of the settlement agreement, and misrepresentation; and (3) filed a third-party complaint against Masui alleging that he breached his duty to Defendants by failing to obtain the required employer's consent, failing to exercise reasonable care and diligence to obtain consent, and misrepresenting to Defendants that he had obtained such consent, thus causing excess litigation expenses.

### 1. Defendants' motion to interplead

On October 11, 2000, Defendants filed a motion to: (1) interplead and deposit with the court $125,000.00, representing the settlement proceeds of the first lawsuit; and (2) dismiss Defendants. At a November 6, 2000 hearing, the court orally denied the motion, reasoning that there was still a dispute as to whether or not there was a settlement. An

order denying the motion was entered on December 4, 2000.

### 2. Defendants' counterclaim against Buscher

On May 15, 2001, Defendants moved for partial summary judgment on their counterclaim against Buscher as to Counts II (breach) and III (misrepresentation). By order dated July 6, 2001, the court found that the State "did not agree to the settlement," and that there was "no valid settlement under HRS § 386–8." The court, however, inexplicably granted Defendants' motion. On July 22, 2002, Buscher filed a motion for relief from the judgment or order on the grounds of mistake, inadvertence, and/or to accomplish justice. By order dated September 13, 2002, the court granted Buscher's motion and set aside its order granting Defendants' motion for partial summary judgment.

On April 29, 2002, Buscher moved to dismiss Count I (abuse of process) and Count III (misrepresentation) of the counterclaim, arguing, inter alia, that: (1) because the court found that there was no settlement, Buscher cannot be said to have abused the legal process by pursuing her lawsuit against Defendants; and (2) Defendants failed to state a claim for misrepresentation because they did not allege that when Buscher signed the settlement agreement, it was with the present intent to make a false representation. Following a hearing on June 10, 2002, the court granted Buscher's motion by order dated August 19, 2002.

On October 31, 2002, Buscher filed a motion to dismiss Count II of the counterclaim (breach), asserting that without a valid settlement agreement, there can be no breach. The court granted Buscher's motion on January 24, 2003. Judgment was entered in favor of Buscher on March 4, 2003.

### 3. Buscher's motion to set aside the stipulation dismissing Civil No. 97–237k with prejudice

In the meantime, on July 27, 2001, Buscher filed a motion to set aside the stipulation dismissing with prejudice Civil No. 97–237K, requesting that the circuit court, pursuant to

Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b), relieve Buscher from the stipulation because the settlement agreement, upon which she relied in executing the stipulation, was void or voidable. After an August 9, 2001 hearing, the court granted the motion by order dated September 24, 2001.

### 4. Jury trial on Buscher's personal injury case

Jury trial commenced on Buscher's personal injury case against Boning on September 11, 2001. The jury returned a verdict in favor of Buscher, and on November 7, 2002, judgment was entered in her favor in the amount of $275,000.00.

### 5. Bench trial on Defendants' cross-claim against the State

On February 11, 2002, after a bench trial, the circuit court issued its findings of fact, conclusions of law, and order, which, *inter alia*, dismissed Defendants' cross-claim against the State. The court entered the following relevant findings:

48. [The State]'s failure to consent to the settlement agreement was unreasonable and the direct result of a negligent review of Plaintiff Buscher's worker's compensation and liability claims by [the State]. Said review was below the standard of care required of an employer in determining whether to consent to employee[s'] personal injury settlement agreements. (Trial testimony of Richard K. Griffith, page 23, line 7–18.)

49. [The State]'s negligent claim handling, i.e.[,] its wrongful refusal to consent to Plaintiff Buscher's settlement agreement with Defendant Boning, was a legal cause of Plaintiff Buscher's emotional distress.

The court additionally entered the following pertinent conclusions of law:

6. By choosing not to intervene in Plaintiff Buscher's suit against Defendant Boning or prosecute its own claim against them, [the State] chose to rely on Plaintiff Buscher's prosecution of her case against Defendant Boning as [the State]'s sole source of potential recovery of its worker's compensation lien/benefits.

. . . .

10. [The State]'s October 15, 1999 letter Exhibit D–10 JWT is not consent as that term is used in [HRS § ]386–8 because it purports to reserve to the employer the right to sue the tortfeasor, whereas the consent under [HRS § ]386–8 means the employer looks only to the settlement proceeds for reimbursement of its worker's compensation lien claim and gives up its right to sue the tortfeasor.

11. The court finds that [the State] had a duty to act reasonably to Plaintiff Buscher in evaluating the settlement agreement in August 1999.

12. [The State] had a duty not to unreasonably withhold its consent from Plaintiff/Defendant Boning settlement agreement.

13. [The State] waived its immunity under [HRS chapter] 662, and none of the exceptions under [HRS § ]662–15(4) apply to protect the State.

14. Based upon [the State]'s conduct in handling the worker's compensation case, the reasons given for withholding consent, the [State]'s non-participation in the prosecution of its liens, the court concludes that the [State] unreasonably refused to consent to the proposed settlement agreement.

The court ruled that, based on the State's unreasonable refusal to consent, Buscher had stated claims against the State for negligent infliction of emotional distress, intentional infliction of emotional distress, and intentional harm. Nevertheless, the court ruled that "Buscher has not specifically proven monetary damages nor has she proven any general damages as a result of the emotional distress[,]" and dismissed Buscher's claims. Additionally, the court dismissed Defendants' claims against the State, reasoning that "[w]ith respect to [the State]'s negligent claim handling and its impact on Defendant Boning, there is no duty which gives rise to a cause of action for 'unreasonable failure to consent,' 'negligent claim handling[,]' [ ] or 'negligent failure to consent.' "

### 6. Defendants' third-party complaint against Masui

On April 29, 2002, Masui filed a motion to dismiss Defendants' third-party complaint against him. Masui's motion was granted on August 5, 2002 after a June 10, 2002 hearing. Judgment was entered in favor of Masui by order filed November 7, 2002.

### 7. Defendants' motion to enforce the settlement agreement

On August 5, 2002, Defendants filed a motion to enforce the settlement agreement, to order the State to consent to the settlement agreement, and for relief from the February 11, 2002 findings of fact, conclusions of law, and order. After a hearing on October 7, 2002, the circuit court denied the motion on October 24, 2002.

### 8. Appeal, final judgment, and taxation of costs

On March 31, 2003, Defendants filed a notice of appeal. On April 3, 2003, Buscher filed a notice of cross-appeal. On September 16, 2003, we filed an order dismissing the appeal and cross-appeal, noting that the orders and uncertified judgments were not reduced to a single judgment resolving all claims and parties as required by HRCP Rule 58 and *Jenkins v. Cades Schutte Fleming & Wright*, 76 Hawai'i 115, 119–20, 869 P.2d 1334, 1338–39 (1994).

On November 19, 2003, Buscher filed a bill of costs in the circuit court, and on December 1, 2003, Defendants filed objections thereto. On October 18, 2004, Buscher filed an amended bill of costs, and on October 25, 2004, Defendants again filed objections thereto. On October 25, 2004, Buscher filed a motion for taxation of costs. Defendants and the State each filed memoranda in opposition to Buscher's motion on November 10 and 12, 2004, respectively. A hearing was held on November 29, 2004.

On March 15, 2005, final judgment was entered disposing of all claims and parties in the case. Defendants filed their notice of appeal on April 12, 2005. The circuit court granted Buscher's October 25, 2004 motion for taxation of costs on June 1, 2005.

## II. STANDARDS OF REVIEW

### A. HRCP Rule 60 Motion to Set Aside Stipulation to Dismiss With Prejudice

"An appellate court reviews a circuit court's determination of an HRCP Rule 60 motion for an abuse of discretion." *Amantiad v. Odum*, 90 Hawai'i 152, 158, 977 P.2d 160, 166 (1999) (citations omitted). "[A]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Office of Hawaiian Affairs v. State*, 110 Hawai'i 338, 351, 133 P.3d 767, 780 (2006) (quoting *Ranger Ins. Co. v. Hinshaw*, 103 Hawai'i 26, 30, 79 P.3d 119, 123 (2003)).

### B. Motion to Enforce Settlement Agreement

"A trial court's determination regarding the enforceability of a settlement agreement is a conclusion of law reviewable *de novo*." *Assocs. Fin. Servs. Co. of Hawai'i, Inc. v. Mijo*, 87 Hawai'i 19, 28, 950 P.2d 1219, 1228 (1998) (citation omitted).

### C. Interpretation of Statutes and Court Rules

Statutory interpretation is "a question of law reviewable *de novo*." *State v. Levi*, 102 Hawai'i 282, 285, 75 P.3d 1173, 1176 (2003) (quoting *State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)). "When interpreting rules promulgated by the court, principles of statutory construction apply." *Kawamata Farms, Inc. v. United Agri Prods.*, 86 Hawai'i 214, 255, 948 P.2d 1055, 1096 (1997) (quoting *State v. Baron*, 80 Hawai'i 107, 113, 905 P.2d 613, 619 (1995)).

### D. Duty

"The existence of duty owed by the defendant to the plaintiff ... is entirely a question of law." *Knodle v. Waikiki Gateway Hotel, Inc.*, 69 Haw. 376, 385, 742 P.2d 377, 383 (1987) (citations omitted).

### E. Motion to Dismiss

A trial court's ruling on a motion to dismiss is reviewed *de novo*. *Bremner v. City & County of Honolulu*, 96 Hawai'i 134, 138, 28 P.3d 350, 354 (App.2001). The court must accept plaintiff's allegations as true and view them in the light most favorable to the plaintiff; dismissal is proper only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief." *Dunlea v. Dappen*, 83 Hawai'i 28, 32, 924 P.2d 196, 200 (1996), *overruled on other grounds by Hac v. Univ. of Hawai'i*, 102 Hawai'i 92, 105–06, 73 P.3d 46, 59–60 (2003) (citations omitted). However, ... a motion seeking dismissal of a complaint is transformed into a Hawai'i Rules of Civil Procedure (HRCP) Rule 56 motion for summary judgment when the circuit court considers matters outside the pleadings. *Au v. Au*, 63 Haw. 210, 213, 626 P.2d 173, 176 (1981).

*Wong v. Cayetano*, 111 Hawai'i 462, 476, 143 P.3d 1, 15 (2006).

### F. Motion for Summary Judgment

We review the circuit court's grant or denial of summary judgment *de novo*. *Hawaii [sic] Community Federal Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the nonmoving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Coon v. City and County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002) (second alteration in original).

*Kau v. City & County of Honolulu*, 104 Hawai'i 468, 473–74, 92 P.3d 477, 482–83 (2004).

### G. Taxation of Costs

"The award of a taxable cost is within the discretion of the [circuit] court and will not be disturbed absent a clear abuse of discretion." *Wong v. Takeuchi*, 88 Hawai'i 46, 52, 961 P.2d 611, 617 (1998) (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. The Circuit Court Did Not Abuse its Discretion in Granting Buscher's Motion to Set Aside the Stipulation to Dismiss.

Defendants first allege that the circuit court abused its discretion in setting aside the stipulation to dismiss with prejudice Civil No. 97–237K. Buscher responds that the court did not abuse its discretion because pursuant to HRS § 386–8, neither the settlement nor the stipulation was valid without the State's written consent. We agree with Buscher.

#### 1. The settlement agreement was not valid pursuant to the plain meaning of HRS § 386–8.

HRS § 386–8 states, in relevant part, that "[n]o release or settlement of any claim or action under this section is valid without the written consent of both employer and employee." This plain and unambiguous language required the State to consent in writing to validate the settlement between Buscher and Boning. *See Shimabuku v. Montgomery Elevator Co.*, 79 Hawai'i 352, 357, 903 P.2d 48, 53 (1995) ("[U]nder the clear language of HRS § 386–8, an injured employee, who has previously received workers' compensation benefits, may not dismiss a claim against a third-party tortfeasor without written consent of the employer."). The cir-

cuit court correctly found, and Defendants agree, that the State did not consent in writing.[3] Rather, its October 15, 1999 letter proposed an alternative "settlement," with which Boning did not agree, whereby the State purported to reserve its right to sue Boning. Therefore, the State's October 15, 1999 letter did not constitute written consent to the settlement as required by HRS § 386–8, and the settlement was not valid.

### 2. The circuit court did not abuse its discretion in setting aside the stipulation.

Defendants contend, however, that the stipulation to dismiss with prejudice could not be set aside because: (1) it was improper for the trial court to allow Buscher to make a motion in an independent action after the initial case was dismissed with prejudice; (2) Buscher did not have "clean hands" because she breached the settlement agreement; (3) none of the reasons enumerated in HRCP Rule 60(b) existed to support setting aside the dismissal of Civil No. 97–237K; (4) Buscher's motion to set aside the dismissal was untimely and she did not exercise due diligence inasmuch as two years passed between the dismissal of Civil No. 97–237K and her motion; and (5) Buscher did not show that she was "injured and that circumstances beyond ... her control prevented timely action to protect [her] interest" as required by *Lehman v. United States*, 154 F.3d 1010 (9th Cir.1998). These contentions are unavailing.

■ In *Shimabuku v. Montgomery Elevator Co.*, we addressed a similar situation involving an employee's workers' compensation and third-party claims. Therein, the plaintiffs, the injured employee and his wife, stipulated with the defendants to dismiss all claims and settled their personal injury and loss of consortium claims against the defendants without the consent of the injured employee's employer. 79 Hawai'i at 354, 903 P.2d at 50. We held, pursuant to HRS § 386–8, that without the employer's consent, the stipulation to dismiss with prejudice was invalid. *Id.* at 358, 903 P.2d at 53. Likewise, the stipulation to dismiss in the instant case was invalid because the State did not consent thereto. Accordingly, the circuit court did not abuse its discretion in setting aside the stipulation.

While *Shimabuku* is dispositive on this issue, we will proceed to address Defendants' specific arguments.

■ HRCP Rule 60(b) provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) *any other reason justifying relief from the operation of the judgment.* The motion shall be made within a *reasonable time* .... This rule does not limit the power of a court to entertain an *independent action* to relieve a party from a judgment, order, or proceeding ....

(Emphases added.) According to the plain language of the rule, a court can "entertain an independent action to relieve a party from a judgment, order, or proceeding...." As such, Defendants' first contention is without merit.

With respect to Defendants' second contention, Buscher could not have breached the settlement agreement because, as discussed in Section III.A.1, *supra*, there was no valid settlement agreement to breach.[4]

---

3. It is Buscher's position that the State's October 15, 1999 letter constituted valid written consent pursuant to HRS § 386–8. In Buscher's view, HRS § 386–8 only requires that the employer consent to the settlement agreement; it does not require that the employer agree to release all claims the employer may have against the defendant. Buscher, however, did not cross-appeal the circuit court's ruling to the contrary. Ac-

cordingly, this issue is not properly before us on appeal and need not be decided herein.

4. Although Defendants admit that the State did not consent to the settlement, Defendants contend that the settlement agreement was still valid and enforceable as between Buscher and Boning. We disagree, as discussed in Section III.B, *infra*.

214

Defendants' third assertion that none of the reasons enumerated in HRCP Rule 60(b) existed to support setting aside the dismissal of Civil No. 97–237K is also without merit. According to HRCP Rule 60(b), "the court may relieve a party ... from a final judgment, order, or proceeding for ... (6) any other reason justifying relief from the operation of the judgment." The Intermediate Court of Appeals (ICA) has stated that "Rule 60(b)(6) empowers the court in its discretion to vacate a judgment whenever that action is appropriate to accomplish justice." *In re Hana Ranch Co., Ltd.*, 3 Haw.App. 141, 147, 642 P.2d 938, 942 (1982). The fact that the settlement, upon which the stipulation to dismiss was based, was not valid constitutes an appropriate reason justifying relief, and the circuit court did not abuse its discretion in so ruling.

Defendants' fourth contention that Buscher did not exercise due diligence and that her motion was untimely, is also unavailing. HRCP Rule 60(b)(6) requires that the motion be made "within a reasonable time[.]" After the dismissal of Civil No. 97–237K, Buscher and Boning both attempted to get the State's consent and argued their respective positions regarding the effect of the State's October 15, 1999 letter. Based on the letters exchanged between the parties' attorneys, it appears that the parties realized that they had come to an impasse in approximately November 1999. One month later, Buscher filed the instant lawsuit. Buscher filed her motion to set aside the stipulation approximately one and one-half years later. Although ultimately, nearly two years elapsed between the dismissal of Civil No. 97–237K and Buscher's motion to set aside the dismissal, based on the circumstances of this case, it cannot be said that the circuit

court's ruling that such time period was reasonable clearly exceeded the bounds of reason to Defendants' substantial detriment.[5]

Finally, in addition to the fact that this court is not bound by Ninth Circuit precedent, Defendants' citation to *Lehman* is unavailing. First, Defendants contend that Buscher was not injured by the dismissal of Civil No. 97–237K. Contrarily, inasmuch as the settlement agreement was not valid, if the circuit court had not set aside the dismissal of Civil No. 97–237K, Buscher would have recovered nothing from Defendants, who maintained that they did not have to pay the $125,000.00 settlement consideration until Buscher procured the State's consent to the settlement agreement as required by HRS § 386–8. Second, Defendants contend that Buscher did not show that circumstances beyond her control prevented timely action to protect her interests because, according to Defendants, it was solely Buscher's fault that she failed to get the State's consent, thus thwarting consummation of the settlement. To the contrary, both parties attempted and failed to obtain the State's consent to their settlement agreement. The fact that the State unreasonably withheld its consent, a finding not challenged as a point of error on appeal, was not within Buscher's control.

Based on the extraordinary circumstances in this case, which ultimately led to the invalidity of the settlement and stipulation, it is clear that Defendants did not carry their burden of establishing that the circuit court abused its discretion in setting aside the stipulation to dismiss. *See Ditto v. McCurdy*, 103 Hawai'i 153, 162, 80 P.3d 974, 983 (2003) ("The burden of establishing abuse of discretion is on the appellant, and a strong showing is required to establish it." (Quoting *Lepere v. United Pub. Workers, Local*

5. Defendants' reliance on *Dillingham Inv. Corp. v. Kunio Yokoyama Trust*, 8 Haw.App. 226, 797 P.2d 1316 (1990), and *Hawai'i Housing Authority v. Uyehara*, 77 Hawai'i 144, 883 P.2d 65 (1994), is unavailing. Unlike the instant case, *Dillingham* dealt with a motion for relief from judgment based on HRCP Rule 60(b)(1), which, by its terms, must be filed within one year after the judgment, order, or proceeding was entered or taken. Here, Buscher's motion did not request relief based on HRCP Rule 60(b)(1), (2), or (3), all of which are statutorily required to be filed

within one year. Rather, Buscher's motion needed only to be filed within the more expansive "reasonable" time period. *Uyehara* is also distinguishable from the instant case because more than three and one-half years elapsed between the entry of the dismissal order and the time Uyehara filed his HRCP Rule 60 motion. 77 Hawai'i at 149, 883 P.2d at 70. Moreover, unlike in this case, the circuit court in *Uyehara* ruled that such a time delay was *not* reasonable; we affirmed, concluding that the circuit court had not abused its discretion in so ruling. *Id.*

*646,* 77 Hawai'i 471, 474, 887 P.2d 1029, 1032 (1995).)).

### B. *The Circuit Court Did Not Err in Refusing to Enforce the Settlement Agreement.*

Defendants also contend that the circuit court erred in refusing to enforce the settlement agreement. Because, as discussed in Section III.A.1, *supra,* the settlement agreement was not valid pursuant to HRS § 386–8, the circuit court did not err in refusing to enforce it. Nevertheless, Defendants contend that although the State did not consent to the settlement, the settlement agreement was still valid and enforceable as between Buscher and Boning. We disagree.

Defendants point to language in Buscher's complaint in which she admitted that there was a settlement agreement between Boning and herself, arguing that such admissions are binding on Buscher. Even assuming, *arguendo,* that Buscher believed the settlement agreement was valid, this does not change the fact that HRS § 386–8 requires the State's consent without which there can be no valid settlement agreement. The agreement between Buscher and Boning cannot be read as anything other than a proposed settlement agreement, which never reached fruition because of the State's failure to consent. Accordingly, the circuit court did not err in denying Defendants' motion to enforce the settlement agreement.

### C. *The Circuit Court Did Not Err in Dismissing Defendants' Cross–Claim Against the State.*

As stated in Section I.B.5, *supra,* the circuit court found that "[The State]'s negligent claim handling, i.e.[,] its wrongful refusal to consent to Plaintiff Buscher's settlement agreement with Defendant Boning, was a legal cause of Plaintiff Buscher's emotional distress." The court therefore concluded that Buscher stated a claim for negligent infliction of emotional distress, intentional infliction of emotional distress, and intentional harm. Defendants aver that because the

court found the foregoing, the court erred in also finding that Defendants did not have claims against the State for "unreasonable failure to consent" and "negligent claims handling." The State replies that the circuit court correctly rejected the cross-claim against it because: (1) the plain statutory language of HRS § 386–8 does not mandate that consent shall not be unreasonably withheld; (2) the legislative history of the statute indicates an intent to protect the interests of the employer and the employee, but not the tortfeasor; (3) the statutes and cases from other jurisdictions upon which Defendants rely are irrelevant and distinguishable; (4) common sense requires affirmance; (5) the State has specifically not waived its immunity for the claims asserted; and (6) the State's conditional consent to the settlement agreement was reasonable.

### 1. The State Tort Liability Act

 As a threshold matter, we first address the State's contention that it is immune from suit based on the State Tort Liability Act (STLA), HRS chapter 622. Generally, "[a] sovereign [s]tate is immune from suit for money damages, except where there has been a 'clear relinquishment' of immunity and the [s]tate has consented to be sued." *Bush v. Watson,* 81 Hawai'i 474, 481, 918 P.2d 1130, 1137 (1996) (quoting *Pele Defense Fund v. Paty,* 73 Haw. 578, 605, 837 P.2d 1247, 1265 (1992)) (internal quotation marks omitted). The STLA provides that "[t]he State hereby waives its immunity for liability for the torts of its employees and shall be liable in the same manner and to the same extent as a private individual under like circumstances[.]" HRS § 662–2 (1993). Notwithstanding this general waiver, the STLA contains numerous exceptions for which the State retains its sovereign immunity. Here, the State contends that Defendants' cross-claim falls within HRS § 662–15(4) (1993), which states an exception for "[a]ny claim arising out of . . . interference with contract rights[.]"[6] Assuming, without

---

6. We noted in *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel,* that the requisite elements of intentional or tortious interference with contractual relations are:

deciding, that a claim for interference with prospective business advantage [7] or prospective contractual relations [8] falls within the aforementioned exception,[9] we nevertheless disagree that Defendants' claims for "unreasonable failure to consent" and "negligent claims handling" constituted such an interference claim. It cannot be said that the State improperly interfered with the alleged settlement agreement because, pursuant to HRS § 386-8, the State was a necessary party to such agreement. *See Hall v. Burger King Corp.*, 912 F.Supp. 1509, 1537 (S.D.Fla.1995) (holding that because any prospective sale of the restaurant required the defendant's consent, defendant's refusal to consent did not give rise to a claim for tortious interference). *Cf. Ethyl Corp. v. Balter*, 386 So.2d 1220, 1224 (Fla.App.1980) ("[A] cause of action for

> (1) a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach the contract; (4) the absence of justification on defendant's part; (5) the subsequent breach of the contract by the third party; and (6) damages to the plaintiff.
> 113 Hawai'i 251, 267 n. 17, 151 P.3d 732, 748 n. 17 (2007) (citations omitted).

7. In *Kahala Royal Corp.*, we noted that the following elements constitute the tort of intentional or tortious interference with prospective business or economic advantage:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.
> *Id.* at 267 n. 18, 151 P.3d at 748 n. 18 (citation omitted).

8. In *Kutcher v. Zimmerman*, the ICA noted that "the tort of interference with prospective contractual relations is a sub-species of the broader tort of interference with prospective economic advantage." 87 Hawai'i 394, 405 n. 15, 957 P.2d 1076, 1087 n. 15 (App.1998). The ICA then held that a plaintiff alleging the tort of interference with prospective contractual relations must plead and prove the following:

interference does not exist against one who is himself a party to the contract allegedly interfered with"); *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 891 P.2d 639, 647 (1995) (holding that a party to a contract could not be liable in tort for conduct which the party was entitled to do under the contract, even if party has malevolent purpose); *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 554 (9th Cir. 1984) (concluding that a "tort [ ] committed by persons sustaining contract relations" does not constitute the tort of interference with contract rights) (citing *Nicholson v. United States*, 177 F.2d 768, 769 (5th Cir. 1949)). We therefore hold that the interference with contract rights exception does not apply to the instant case.

> (1) a prospective contractual relationship existed between the plaintiff and a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally interfered with the plaintiff's prospective contract; (4) the defendant acted without proper justification; (5) the defendant's interference caused the third party to fail to consummate the prospective contract with the plaintiff; and (6) the defendant's interference caused damages to the plaintiff.
> *Id.* at 406, 957 P.2d at 1088 (footnotes omitted).

9. The ICA, in *Kutcher*, recognized that "the interests protected by [the tort of interference with existing contractual relations] and by the tort of intentional interference with prospective economic advantage have been viewed as related[.]" 87 Hawai'i 394, 405 n. 15, 957 P.2d 1076, 1087 n. 15 (App.1998). Most jurisdictions appear to agree that the tort of interference with prospective economic advantage falls within the "interference with contract rights" exception to the waiver of sovereign immunity. *See, e.g., Art Metal–U.S.A., Inc. v. United States*, 753 F.2d 1151, 1155 (D.C.Cir.1985) (compiling cases and holding that the plaintiff's "claims for interference with prospective advantage are barred as claims arising out of interference with contract rights"); *Dupree v. United States*, 264 F.2d 140, 143–44 (3d Cir.) (concluding that the tort of interference with prospective advantage was "simply an extension" of the tort of interference with contractual relations and was thus includable within the exception to the tort claims act) (citation omitted), *cert. denied*, 361 U.S. 823, 80 S.Ct. 69, 4 L.Ed.2d 67 (1959). *But see Colorado Ins. Group, Inc. v. United States*, 216 F.Supp. 787, 793 (D.Colo.1963) ("[A] mere allegation of interference with prospective advantage should not be construed to necessarily fall within the statutory exception pertaining to interference with contractual rights.").

**2. The State does not owe Defendants an actionable duty.**

Defendants next challenge the circuit court's conclusion that "[w]ith respect to [the State]'s negligent claim handling and its impact on Defendant Boning, there is no duty which gives rise to a cause of action for 'unreasonable failure to consent,' 'negligent claim handling[,]' [ ] or 'negligent failure to consent.' " The State responds that the circuit court correctly determined that it does not owe an actionable duty to Defendants. We agree with the State.

a. *Duty, Generally*

■ We have often stated:

The existence of duty owed by the defendant to the plaintiff, that is, whether such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant, is entirely a question of law.

*Knodle,* 69 Haw. at 385, 742 P.2d at 383 (internal quotation signals, ellipsis, and citations omitted). The State correctly notes that the plain language of HRS § 386–8, *supra* note 2, does not explicitly mandate that an employer has a duty not to unreasonably withhold consent. However, this is not dispositive of whether a duty exists here. Rather, in considering whether to impose a duty on a defendant (here, the State) to be owed to a plaintiff (here, Defendants) we have stated generally that:

[W]e recognize that duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. Legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done. In determining whether or not a duty is owed, we

must weigh the considerations of policy which favor the [plaintiffs'] recovery against those which favor limiting the [defendants'] liability. The question of whether one owes a duty to another must be decided on a case-by-case basis. However, we are reluctant to impose a new duty upon members of our society without any logical, sound, and compelling reasons taking into consideration the social and human relationships of our society.

*Blair v. Ing,* 95 Hawai'i 247, 259–60, 21 P.3d 452, 464–65 (2001) (citations omitted).

b. *Caselaw and statutes*

■ Defendants cite to various caselaw and statutes, mainly from other jurisdictions, to support their contention that we should interpret HRS § 386–8 as imposing a duty on the employer, in favor of the tortfeasor, not to unreasonably withhold consent to the settlement agreement. The State contends that the statutes and cases upon which Defendants rely are irrelevant and distinguishable. Again, we agree with the State.

The only Hawai'i case cited by Defendants is *State Farm v. Pacific Rent–All, Inc.,* in which we "[w]eigh[ed] the policy considerations underlying an insurer's right of subrogation against those considerations supporting the finality of settlement," and held that "in the context of fire and casualty insurance," a settlement agreement between an insured and a tortfeasor does not bar an insurer's subrogation action. 90 Hawai'i 315, 332, 978 P.2d 753, 770 (1999). As *Pacific Rent–All* makes clear, HRS § 386–8 supports our holding in that case because it statutorily preserves an employer's subrogation rights from third-party settlement. *See id.* It is unclear, however, how that case supports Defendants' position that an employer/insurer has a duty not to unreasonably refuse to consent to a settlement agreement.[10] Rather, the case seems to support the State's position insofar as it emphasizes that an employer's subrogation interest out-

---

10. To the extent that Defendants are arguing that *Pacific Rent–All* supports their contention that the settlement agreement should be enforceable as between Buscher and Boning, such argument is without merit for the reasons set forth in Section III.B, *supra,* and because *Pacific Rent–All* was decided "in the context of fire and casualty insurance," and not HRS § 386–8.

weighs the tortfeasor's interest in reaching a settlement with an employee.

Defendants also rely on *Eckhardt v. Village Inn (Vicorp)*, 826 P.2d 855 (Colo.1992), in which the Colorado Supreme Court held that an insurance carrier's refusal to approve a settlement between an injured employee and third-party tortfeasor must be reasonable. In that case, Eckhardt, the injured employee, received workers' compensation benefits from his employer, via the insurance carrier, after being injured in a truck accident. *Id.* at 857. Eckhardt subsequently sued the tortfeasor. *Id.* Realizing that a recovery in his third-party suit was unlikely, Eckhardt entered into settlement negotiations, and the tortfeasor offered $12,500.00. *Id.* Eckhardt sought the carrier's approval, pursuant to a Colorado statute requiring the carrier's consent prior to settlement when the amount to be recovered is less than the total compensation owed by the carrier. *Id.* The carrier offered to approve a settlement in which it would receive $7,000.00 and a complete release from its obligation to pay Eckhardt any future benefits related to his claim. *Id.* After Eckhardt refused the offer, the carrier refused to consent to any settlement not sufficient to indemnify fully the carrier for its subrogated interest. *Id.* at 857–58. Eckhardt nevertheless settled with the tortfeasor for $12,500.00. *Id.* at 858. The Colorado Court of Appeals affirmed the administrative law judge's conclusion that Eckhardt had forfeited future benefits by settling the suit against the tortfeasor without the carrier's consent. *Id.* The Colorado Supreme Court granted certiorari and reversed, holding that "an insurance carrier, which has been properly notified about a suit brought in good faith by the injured employee, has an obligation to act reasonably when an injured employee requests approval of a settlement in such a suit." *Id.* The court reasoned that

> imposing no duty on the carrier to act reasonably when refusing to consent to a settlement offer would only work to diminish the number of actions initiated by em-

ployees against third-party tortfeasors. The result would be contrary to the intent and purposes of the Act and to employers' best interests because their carriers will not receive any reimbursement from the third parties responsible.

*Id.*

The key fact that distinguishes *Eckhardt* from the instant case is that in that case, unlike here, the injured employee, not the tortfeasor, brought suit against the employer/carrier. In other words, *Eckhardt* stands for the proposition that the insurer owes a duty to the *employee* not to unreasonably withhold consent. The *Eckhardt* Court's reasoning, as set forth above, indicates that its holding promoted the public policy interest of not discouraging employees from suing tortfeasors, thereby also ensuring that employers receive reimbursements from responsible tortfeasors. The court did not mention any public policy supporting the imposition of a duty on the employer owed to the *tortfeasor*. Therefore, *Eckhardt* does not support Defendants' position.

Defendants also direct this court to several states that permit an employee to seek court approval of the settlement in lieu of obtaining the consent of the employer or carrier,[11] and argue that because Hawaiʻi does not have such a statute, we should fashion a remedy for tortfeasors whose settlements are "held hostage" by unreasonable employers or insurers. We look to HRS § 386–8 and its legislative history for guidance in determining whether tortfeasors should be protected by imposing a duty on employers, as Defendants contend.

### c. *Legislative history*

The State aptly points out that the legislative history of HRS § 386–8 indicates that the statute's purpose is to protect the interests of the employee and the employer. As stated in *Shimabuku v. Montgomery Elevator Co.:*

> states that permit an employee to seek court approval of the settlement in lieu of obtaining the consent of the employer or insurer.

**11.** Defendants cite to the states of Arkansas, Massachusetts, Nebraska, and New York, listed in 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 116.07(5) (2000), as

HRS § 386–8 originated in 1915 as section 5 of Act 221 of the Laws of the Territory of Hawai'i. However, the dispositive paragraph of HRS § 386–8 in the instant case, which requires consent of both employer and employee before any "release" or "settlement" is valid, was not added until 1951 when the House Labor Committee amended Senate Bill 418 (S.B. 418) to include the paragraph. 1951 Haw. Sess. L. Act 194, § 4409 at 229. The paragraph proposed by the House Labor Committee provided in relevant part:

No release or settlement of any claim or action under this section is valid without the written consent of both employer and employee. The entire amount of such settlement is subject to the employer's full claim for reimbursement for his expenditures for benefits under this chapter and his expenses and costs of action.

*Id.*

In amending S.B. 418, the House Labor Committee noted:

H.D.1 amends S.D.1 in accordance with suggestions of the Department of Labor and the Insurance Industry so that the wording ... provides a more equitable balance as between the rights of the employer and the employee.

Hse. Stand. Comm. Rep. No. 722, in 1951 House Journal, at 579. Thus, the legislature enacted HRS § 386–8 to give the injured employee a right to claim workers' compensation benefits and to proceed against a third-party tortfeasor without waiving his or her rights to either. Hse. Stand. Comm. Rep. No. 722, in 1951 House Journal, at 579. However, because the employer's right to reimbursement is often dependent on the injured employee's actions, the legislature imposed a provision requiring the written consent of both employer and employee before any release or settlement is valid. Therefore, we must construe the fourth paragraph of HRS § 386–8 to give full effect to the intent of the legislature, which sought to protect the rights of both employees and employers. 79 Hawai'i at 357–58, 903 P.2d at 53.

■■■ As Defendants admit in their reply brief to the State, "[t]he consent requirement of [HRS] § 386–8 is supposed to protect the employer and employee." Indeed, it is clear that our legislature intended the statute to protect the employer's right to reimbursement and the employee's right to claim workers' compensation benefits and to file suit against the tortfeasor.

### d. *Conclusion*

Stated simply, there is nothing in our case-law or in the legislative history of HRS § 386–8 to support the imposition of a duty on employers in favor of *tortfeasors* regarding consent to a third-party settlement. Moreover, we do not believe it to be prudent public policy to impose on employers such an actionable duty.[12] Accordingly, the circuit court did not err in ruling that the State did not owe Defendants an actionable duty and thus, did not err in dismissing Defendants' cross-claim against the State.

### D. *The Circuit Court Did Not Err in Dismissing Defendants' Third–Party Claim Against Masui.*

■■■ Defendants also aver that the circuit court erred in dismissing Defendants' third-party claim against Masui, which alleged "negligent handling of a settlement between his client and [Defendants] resulting in damages to [Defendants]." Specifically, Defendants contend: (1) Masui's motion to dismiss was actually a motion for summary judgment and should have been treated as such; and (2)(a) Masui owed Defendants a duty of care pursuant to *Blair v. Ing*, 95 Hawai'i 247, 21 P.3d 452 (2001), and (b) Masui's failure to obtain the State's consent breached this duty resulting in harm to Defendants. Regardless of whether Masui's motion is reviewed as a motion to dismiss or a motion for summary

---

12. Because we hold that the State does not owe Defendants an actionable duty in this case, we need not discuss whether the State's conditional consent to the proposed settlement agreement was reasonable. Furthermore, as Defendants point out, the circuit court's ruling that the State's refusal to consent was unreasonable with respect to Buscher stands unchallenged because the State did not appeal this ruling.

judgment, based on the following, Defendants' argument that Masui owed Defendants an actionable duty is without merit as a matter of law, and the circuit court did not err in dismissing Defendants' third-party claim against Masui.

■ As the ICA stated in *Myers v. Cohen*, "creation of a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest. Not only would the adversary's interests interfere with the client's interests, the attorney's justifiable concern with being sued for negligence would detrimentally interfere with the attorney-client relationship." 5 Haw.App. 232, 246, 687 P.2d 6, 16 (1984) (quoting *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585, 591 (1981)), *rev'd on other grounds*, 67 Haw. 389, 688 P.2d 1145 (1984). *Accord Rashidi v. Albright*, 818 F.Supp. 1354, 1358 (D.Nev.1993) ("While the Court expects all counsel to conform with the ethical guidelines, imposing an affirmative duty of care to an adverse party in litigation would create an unacceptable conflict of interest."); *Clark v. Druckman*, 218 W.Va. 427, 624 S.E.2d 864, 869 (2005) (collecting cases and stating that "courts which have addressed the issue have uniformly found that an attorney does not have a duty to a third party, including an opposing party, the breach of which would subject the attorney to liability"); *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 750 P.2d 118, 122 (1988) (holding that attorney's actions would not give rise to cause of action under theory of negligence); *Norton v. Hines*, 49 Cal.App.3d 917, 123 Cal.Rptr. 237 (1975) (stating that the plaintiff did not have cause of action against adverse party's attorneys for simple negligence).

Nevertheless, Defendants cite *Blair* for the proposition that "there can be a duty of care between an attorney and a non-client either in negligence or contract actions." *Blair*, however, is distinguishable. *Blair* involved a legal malpractice action brought by the beneficiaries of a trust against the attorney who drafted the trust documents. Therein, we adopted the test set forth in *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961), also a malpractice action against an attorney who drafted trust documents, to determine "whether to impose a duty upon attorneys to non-client beneficiaries *in the estate planning context.*" *Blair*, 95 Hawai'i at 260, 21 P.3d at 465 (emphasis added). Inasmuch as this case clearly does not involve estate planning, the fact that *Blair* held that there could be a duty of care between an attorney and non-client beneficiaries does not support Defendants' assertion that Masui owed an actionable duty of care to Defendants here. Indeed, as we made clear in *Blair*, "we emphasize that our holding today does not create a blanket duty of care to all non-client beneficiaries in every case." *Id.* at 261, 21 P.3d at 466.

■ We therefore hold that Masui did not owe Defendants an actionable duty in the instant case such that Defendants could assert a claim for relief sounding in negligence against him, and the circuit court did not err in so ruling.[13]

### E. Counterclaim Against Buscher and Motion for Interpleader and Dismissal

As their fifth and sixth points of error, Defendants contend that the circuit court erred in: (1) dismissing their motion for interpleader and dismissal "for the reasons stated in the Motion for Interpleader and

---

**13.** Although Defendants appear to frame their issue on appeal in terms of negligence, they also assert at numerous times throughout their briefs that Masui misrepresented to Defendants that he had obtained the State's consent. Unlike a claim for negligence, an attorney can be held liable for fraudulent misrepresentation. *See Kahala Royal Corp.*, 113 Hawai'i at 268–69, 151 P.3d at 749–50 (citing caselaw from other jurisdictions stating that it is well settled that an attorney can be sued by an adverse party for fraud); *Matsuura v. E.I. du Pont*, 102 Hawai'i 149, 162, 73 P.3d 687, 700 (2003) ("Under Hawai'i law, a party is not im-

mune from liability for civil damages based upon that party's fraud engaged in during prior litigation proceedings."); *Giuliani v. Chuck*, 1 Haw. App. 379, 383–84, 620 P.2d 733, 736–37 (1980) ("The rule of law that an attorney representing a client may be held personally liable to an adverse party or a third person who sustains injury as a result of an attorney's intentional tortious acts is well settled." (Citations omitted.)). Defendants, however, concede in their opening brief that "[i]n the instant case, there are no allegations that the agreement between [Buscher] and Defendants was procured by fraud."

For Dismissal Filed October 12, 2000"; and (2) denying their counterclaim against Buscher "for the reasons stated in their Memoranda in Opposition to the motions." Buscher replies that these points of error should be deemed waived pursuant to HRAP Rule 28(b)(7) because Defendants fail to provide an argument, citations to authorities, statutes, and parts of the record upon which they relied. Inasmuch as Defendants indeed do not have a corresponding argument section for either their fifth or sixth points of error, and only direct this court to look at previously filed memoranda, we deem these points of error waived. *See* HRAP Rule 28(b)(7) (stating that an opening brief should contain "[t]he argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.... Points not argued may be deemed waived").[14] If we were to accept Defendants' previously filed memoranda as Defendants' argument in support of these points of error, and thus, part of their opening brief, Defendants would be in violation of HRAP Rule 28(a), which states that "an opening ... brief shall not exceed 35 pages[.]" Accordingly, Defendants' fifth and sixth points of error are waived.

### F. *The Circuit Court's Award of Costs*

Finally, Defendants contend that the circuit court (1) lacked jurisdiction to enter an order granting Buscher's motion for taxation of costs, and in the alternative, (2) abused its discretion in granting such costs.

#### 1. The circuit court had jurisdiction to grant Buscher's motion for costs.

 HRAP Rule 4(a)(3) (2006), entitled "Time to appeal affected by post-judgment motions," states:

If any party files a timely motion ... for attorney's fees or costs, the time for filing the notice of appeal is extended until 30 days after entry of an order disposing of the motion; provided, that the failure to

dispose of any motion by order entered upon the record within 90 days after the date the motion was filed shall constitute a denial of the motion.

This rule, effective January 1, 2000, supersedes the line of cases standing for the proposition that the circuit court lacks jurisdiction to award costs after a notice of appeal is filed. The rule provides that the court has 90 days to dispose of a postjudgment motion for costs, regardless of when the notice of appeal is filed. In the instant case, Buscher prematurely filed her motion for costs on October 25, 2004, four and one-half months prior to the entry of final judgment on March 15, 2005. Although the rule does not address the situation in which a motion for costs is prematurely filed prior to the entry of final judgment, we will deem such motion filed immediately after the judgment becomes final for the purpose of calculating the 90–day period. As such, the court's June 1, 2005 order granting Buscher's motion for costs is valid, and Defendants' April 12, 2005 notice of appeal is deemed to appeal this disposition. HRAP Rule 4(b)(3).

#### 2. The circuit court's award of costs

##### a. *HRCP Rule 68*

 We first address Buscher's contention that she is entitled to costs under HRCP Rule 68 (2001), which provides, in relevant part:

At any time more than 10 days before the trial begins, any party may serve upon any adverse party an offer of settlement or an offer to allow judgment to be taken against either party for the money or property or to the effect specified in the offer, with costs then accrued.... An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. *If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.*

---

14. Buscher previously filed a motion to strike Defendants' first opening brief, arguing, *inter alia,* that Defendants' fifth and sixth points of error should be deemed waived pursuant to

HRAP Rule 28(b)(7). This court, on October 14, 2005, granted Buscher's motion to strike Defendants' first opening brief, but for failure to comply with HRAP Rule 28(b)(4).

(Emphasis added.) Buscher filed two purported HRCP Rule 68 offers of judgment—one on January 31, 2001 and one on July 27, 2001—both in the amount of $200,000.00. The judgment entered against Boning after a jury trial was in the amount of $275,000.00. Although this judgment was not more favorable to Boning than Buscher's offers, Buscher is not entitled to costs under HRCP Rule 68 because her two offers did not constitute valid Rule 68 offers inasmuch as they did not "fully and completely decide the claim or claims toward which the offer[s] [were] directed." *Kikuchi v. Brown*, 110 Hawai'i 204, 209, 130 P.3d 1069, 1074 (App.2006) (quoting *Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co.*, 100 Hawai'i 97, 120, 58 P.3d 608, 631 (2002) (quoting *Crown Props., Inc. v. Fin. Sec. Life Ins. Co.*, 6 Haw.App. 105, 113, 712 P.2d 504, 510 (1985))). Here, as discussed in Section III.A, *supra*, a settlement would not have been valid without the State's consent pursuant to HRS § 386–8. Thus, had Boning accepted Buscher's purported offer of judgment, it would not have fully and completely decided the claims toward which the offer was directed because it lacked the State's written consent. As such, Buscher's offers were not sufficient to qualify as HRCP Rule 68 offers of judgment.

b. *HRCP Rule 54(d)*

Buscher, however, is entitled to costs under HRCP Rule 54(d), which provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" "Costs" are those properly awardable under HRS § 607–9 (1993), which states:

> All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs.

We therefore now address each of Defendants' challenges to the circuit court's award of costs to Buscher.

(1) Messenger services

Defendants first challenge the circuit court's award of $1,125.00 for what Buscher labeled "messenger services," for "FedEx" and "CitiExpress" charges. Defendants contend that Buscher is not entitled to the award because she failed to provide "any explanation for why express service was necessary or reasonable. Moreover, there was no justification or support provided for why [Buscher] is entitled to this. Messenger service is an expensive luxury which would be unnecessary with proper time management and scheduling to avoid the need for express services."

■ "Because there is a presumption that the prevailing party may be awarded its costs, the burden of showing that a particular cost request is unreasonable is more properly on the adverse party." *Wong*, 88 Hawai'i at 53, 961 P.2d at 618. Thus, it was Defendants' burden to show why the expenses were unreasonable.

■ With respect to messenger services, the ICA in *Kikuchi* held that such fees are generally not taxable costs. 110 Hawai'i at 212–13, 130 P.3d at 1077–78. As the ICA explained therein, "except in the rare circumstance where the need in a particular case is extraordinary in its volume or nature, the cost of this function ... is properly treated as overhead." *Id.* at 213, 130 P.3d at 1078. In this case, Buscher's attorneys were on O'ahu, while the case was being tried in the third circuit (Kona Division) on the island of Hawai'i. Buscher avers that the costs requested were for delivery of various pleadings to the third circuit court. Buscher provided itemized invoices detailing the date and place of delivery, a description of the documents delivered (*e.g.*, motions, memoranda, exhibits, subpoenas, etc.), and the cost of each delivery. Despite having this detailed information, Defendants do not provide any evidence that any specific delivery costs were unnecessary or unreasonable. Thus, while messenger services may generally not constitute a taxable cost, it would be reasonable for the circuit court to have allowed a portion of this cost for the expense of mailing the numerous filings from O'ahu to Hawai'i. *See*

HRS § 607–9 ("All actual disbursements, including but not limited to, ... postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs."). We further note that the circuit court reduced Buscher's requested messenger service costs from $2,606.88 to $1,125.00. We therefore hold that the circuit court did not abuse its discretion in awarding Buscher $1,125.00 of her requested costs.

### (2) Expert services

■ Defendants next take issue with Buscher's request for $5,032.74 for "expert services," correctly stating that expert witness fees are generally not taxable as costs. *See Canalez v. Bob's Appliance Serv. Ctr., Inc.*, 89 Hawai'i 292, 307, 972 P.2d 295, 310 (1999) ("[T]his court has reaffirmed the proposition that expert witness fees are normally not allowed." (Citations omitted.)).[15] However, the court only awarded $352.02 for "expert services," apparently for Buscher's request with respect to Micro–Imaging–HI, Inc. (Kona Hospital), which appears to be a charge for a microfilm copy of her medical record as well as a $20.00 "research" charge. This cost, therefore, does not appear to be an expert witness fee. Because Defendants only objected to an award of expert witness fees and do not specifically object to this cost, the circuit court did not abuse its discretion in awarding it. *See Wong*, 88 Hawai'i at 53, 961 P.2d at 618 ("Because there is a presumption that the prevailing party may be awarded its costs, the burden of showing that a particular cost request is unreasonable is more properly on the adverse party.").

### (3) Travel expenses

Buscher requested $6,904.35 for travel expenses, including airfare, rental car fees, lodging, expenses, and meals. The circuit court awarded her costs in the amount of $6,593.04, but did not explain the $311.31 reduction. In support of her airfare and rental car expenses, Buscher provided travel itineraries detailing the date each cost was incurred, the matter requiring travel (*e.g.*, circuit court hearing re: Motions/Settlement Conference), airline flight departure and arrival information, copies of airline coupons used with the passenger's name, rental car charges, and credit card charges showing payment of each expense. Despite having this detailed information, Defendants do not object to any specific travel expense request; their objection, in its entirety, states:

> There was no satisfactory explanation for who incurred these expenses or specifically what they were for. The cost of hotel lodging for witnesses was not awarded by the trial court in the *Harkins* case and the appellate court agreed. *See Harkins v. Ikeda*, [57 Haw. 378, 557 P.2d 788] (1976).

Contrary to Defendants' implication, as stated above, "[b]ecause there is a presumption that the prevailing party may be awarded its costs, the burden of showing that a particular cost request is unreasonable is more properly on the adverse party." *Wong*, 88 Hawai'i at 53, 961 P.2d at 618 (rejecting non-moving party's argument that lower court abused its discretion because moving party failed to explain why the costs were necessary). As we held in *Wong*:

> [W]hen costs are awardable to a prevailing party under HRCP Rule 54(d) and a particular taxable cost is allowed by statute or precedent, then actual disbursements for this purpose are presumptively reasonable. The adverse party has the burden of challenging the reasonableness of a particular cost request. In the absence of a challenge to a particular request, it is not an abuse of discretion for the trial court to award the cost requested as presumptively reasonable.

*Id.* at 53–54, 961 P.2d at 618–19. With this in mind, we address each of the categories in Buscher's request for travel expenses.

■ First, airfare clearly falls within HRS § 607–9's "intrastate travel expenses" category, as do expenditures for parking,

---

**15.** Although in *Canalez* we stated that "expert witness fees incurred after the making of an offer of judgment, if deemed reasonable, are taxable in the court's discretion as costs against the offeree pursuant to HRCP Rule 68[,]" 89 Hawai'i at 308, 972 P.2d at 311, as discussed in Section III.F.2.a, *supra*, Buscher's offers were not sufficient to qualify as HRCP Rule 68 offers of judgment. As such, under HRCP Rule 54(d), expert witness fees are not allowed.

rental car, and gas. *Wong,* 88 Hawai'i at 54, 961 P.2d at 619.

■ On the other hand, "[m]eals are not taxable costs. The necessity for eating lunch is severable from and unrelated to the litigation." *Id.* at 54–55, 961 P.2d at 619–20. After a careful review of the record, it appears that $466.23 of the costs requested were for meals, which are not taxable costs according to *Wong. Id.* Thus, this amount should be deducted from Buscher's award.

■ With respect to Buscher's request for the cost of lodging, we have stated that "[h]otel expenditures are reasonable only if necessary due to the scheduling of court proceedings or depositions. Hotel expenditures for the convenience of counsel should not be allowed." *Id.* at 54, 961 P.2d at 619. As stated above, Defendants do not challenge a particular request, but merely cite to *Harkins v. Ikeda,* for the proposition that hotel lodging for witnesses is not a taxable cost. Defendants, however, do not point to anything in the record indicating that the hotel lodging expense was for witnesses. Defendants also do not argue that the hotel expenditures were otherwise unnecessary or unreasonable. Thus, it is clear that Defendants fail to show that the circuit court abused its discretion in awarding this cost. *See Int'l Bro. of Elec. Workers v. Hawaiian Tel.,* 68 Haw. 316, 322 n. 7, 713 P.2d 943, 950 n. 7 (1986) ("Counsel has no right to cast upon the court the burden of searching through a voluminous record to find the ground of an objection." (Citation omitted.)).

Absent any argument by Defendants objecting to any of Buscher's specific travel expense entries, we conclude that Buscher is entitled to an award of costs for travel expenses in the amount of $6,438.12, which reflects a reduction of $466.23 for the cost of meals.

#### (4) *Court reporter expenses*

The circuit court awarded $4,487.96 for court reporter fees. In support of her request, Buscher provided itemized invoices describing the case name, the date of the deposition, the names of the deponent and the court reporter, and the cost of the deposition. Despite having this detailed information, Defendants make only a general objection that "there was no explanation or support for why [Buscher] is entitled to these costs.... [Buscher] failed to present any explanation in her bill of costs to assist the Court in determining whether the depositions listed were reasonable or necessary." This general objection is substantially similar to the objection rejected in *Wong.* 88 Hawai'i at 53, 961 P.2d at 618 (rejecting non-moving party's argument that the moving party's cost request contained "no explanation as to why these depositions and/or costs they incurred were necessary .... [the moving party's] failure to show why these depositions and/or costs they incurred were necessary make it clear that it would be an abuse of discretion for this court to tax them to [the adverse party]"). As set forth above, "when costs are awardable to a prevailing party under HRCP Rule 54(d) and a particular taxable cost is allowed by statute or precedent, then actual disbursements for this purpose are presumptively reasonable. The adverse party has the burden of challenging the reasonableness of a particular cost request." *Id.* at 53–54, 961 P.2d at 618–19. HRS § 607–9 clearly allows "expenses for deposition transcript originals and copies." Defendants do not indicate which of the depositions were unreasonably obtained or unnecessary and therefore do not carry their burden of showing that the circuit court abused its discretion in awarding this cost. *See Int'l Bro. of Elec. Workers,* 68 Haw. at 322 n. 7, 713 P.2d at 950 n. 7. We thus hold that the circuit court did not abuse its discretion in awarding Buscher court reporter expenses.

Because Defendants do not specifically contest the remainder of Buscher's request, such costs will be presumed reasonable. *See Blair v. Ing,* 96 Hawai'i 327, 335, 31 P.3d 184, 192 (2001) ("No opposition was received regarding the reasonableness of the costs. In the absence of opposition, we presume that the remaining costs were reasonable."). Accordingly, Buscher is entitled to costs in the amount of $20,002.82, which reflects a reduction for meals from Buscher's travel expenses request.

### IV. *CONCLUSION*

Based on the foregoing, the circuit court's March 15, 2005 final judgment is affirmed. In addition, we vacate the circuit court's June 1, 2005 order awarding costs and remand this case to the circuit court with instructions that an amended order be entered, awarding costs in the amount of $20,002.82 in favor of Buscher.